**M. Julia DOS SANTOS, M. D., Plaintiff-Appellee,**

v.

**COLUMBUS–CUNEO–CABRINI MEDICAL CENTER, Anesthesia Associates of Lakeshore, Ltd., and Alphonse Del Pizzo, Defendants-Appellants.**

**No. 81–2628.**

United States Court of Appeals, Seventh Circuit.

Argued April 7, 1982.

Decided Aug. 10, 1982.

Robert S. Atkins, Freeman, Atkins & Coleman, Chicago, Ill., for defendants-appellants.

James P. Chapman, Chapman & Royce, Chicago, Ill., for plaintiff-appellee.

Before BAUER, WOOD, and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

In this case the plaintiff, an anesthesiologist, challenges under the antitrust laws an exclusive dealing contract for the provision of anesthesia services at a hospital. The district court granted a preliminary injunction against the enforcement of the exclusive contract. We now vacate and remand for further proceedings.

I.

The facts are largely undisputed. The plaintiff, M. Julia Dos Santos, M.D., is an

anesthesiologist licensed to practice medicine in Illinois and certified in her specialty by the American Board of Anesthesiology. Defendant Columbus-Cuneo-Cabrini Medical Center ("Medical Center") is an Illinois not-for-profit corporation which operates Columbus, Cuneo and Cabrini Hospitals, all located in the City of Chicago. Defendant Anesthesia Associates of Lakeshore, Ltd. ("Associates") is an Illinois corporation engaged in the business of providing anesthesia services. Defendant Alphonse Del Pizzo is the president and sole shareholder of Associates and he is also chairman of the Department of Anesthesiology at Columbus Hospital.

In May 1977, the Medical Center awarded Associates an exclusive contract for the performance of all anesthesia services at the Medical Center. The one-year contract provided for automatic renewal so long as neither party objected and it could be terminated for "cause" by either party upon 90 days' written notice. A schedule attached to the contract specified the fees to be charged by Associates for services rendered under the contract; these rates were subject to periodic modification if approved by the Medical Center. The Medical Center adopted this exclusive arrangement in the belief that a closed system, in contrast to an open-staff arrangement, would improve the overall quality of patient care and assure the availability of a sufficient number of anesthesiologists around the clock at the three hospitals. Most but not all hospitals in the Chicago area similarly provide for anesthesia services by means of exclusive contracts.

Plaintiff became a salaried employee of Associates on January 29, 1979, under an oral contract terminable at will. She was assigned to work at Columbus Hospital. On January 1, 1981, the Medical Center's Board of Directors appointed plaintiff to a one-year position on the courtesy staff of the Department of Anesthesiology at Columbus Hospital.[1] By letter dated July 1, 1981, Del Pizzo advised plaintiff that her employment with Associates would be terminated on July 31, 1981. The letter did not specify the grounds for this decision.

Following her discharge by Associates, plaintiff was informed by the Medical Center that she could no longer be permitted to offer anesthesia services at Columbus Hospital because she had ceased to be an employee of Associates. Plaintiff was given no other reason for her exclusion from the hospital and she remains a member of the hospital staff. The district court found that plaintiff's exclusion was solely the result of the exclusive contract between Associates and the Medical Center.

Plaintiff filed her complaint in the instant case on July 29, 1981, two days before her termination became effective. She alleged a violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (1976), a violation of the Illinois Antitrust Act, Ill. Rev.Stat. ch. 38, §§ 60–3(1), 60–3(2) (1977), breach of contract and tortious interference with a business relationship.

On July 30, 1981, plaintiff filed a motion for a preliminary injunction. The district court granted the motion at the conclusion of a hearing on September 2, 1981. On October 14, 1981, the district court issued a written decision embodying its findings of fact, conclusions of law and preliminary injunction order. Resting its decision solely on the Sherman Act section 1 claim, the district court preliminarily enjoined the enforcement of the exclusive contract, ordered the defendants to "abolish and dismantle all vestiges" of the exclusive dealing arrangement, and required each individual member of the Department of Anesthesiology to compete to provide anesthesia services at the Medical Center.[2] The defendants appeal from the issuance of this preliminary injunction.

---

1. The exclusive contract required that all anesthesiologists performing services under the contract be qualified for and receive appointments to the medical staff of the Medical Center in accordance with its rules and regulations.

2. In its October 14, 1981, order the district court also denied the defendants' motion to dismiss the complaint for lack of subject matter jurisdiction. This denial was made without prejudice to the defendants' right to renew their motion after discovery had been taken on the question of jurisdiction.

## II.

Of course, we will not disturb the grant of a preliminary injunction unless the district court has abused its discretion. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931–32, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1975); *Machlett Laboratories, Inc. v. Techny Industries, Inc.*, 665 F.2d 795, 797 (7th Cir. 1981). For its part, the district court in ruling on a motion for a preliminary injunction must consider each of four factors: (1) whether the plaintiff will have an adequate remedy at law or will otherwise be irreparably harmed if the injunction does not issue; (2) whether the threatened injury to the plaintiff outweighs the threatened harm that the injunction may inflict on the defendant; (3) whether the plaintiff has at least a reasonable likelihood of success on the merits; and (4) whether the granting of a preliminary injunction will disserve the public interest. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 613 (7th Cir. 1982); *Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 48–49 (7th Cir. 1980). The plaintiff bears the burden of persuasion with respect to each of these factors. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976). For the following reasons, we conclude that the granting of the preliminary injunction in the present case was an abuse of discretion.

The first prerequisite to the granting of temporary relief is a showing that the plaintiff is threatened with irreparable injury for which there is no adequate remedy at law. The district court in the instant case found that plaintiff had indeed been threatened with irreparable injury as a result of her exclusion from the practice of anesthesiology at Columbus Hospital. The court further found that unless plaintiff obtained a preliminary injunction invalidating the exclusive contract, she would be injured in her profession "in that she will be stigmatized in the medical community, her professional competence will be questioned, her prospects for future employment will be diminished, and she will be deprived of valuable experience in the practice of anesthesiology." We cannot agree with the district court that these injuries support the granting of the requested preliminary relief.

We note initially that a temporary loss of income does not usually constitute irreparable injury because this deprivation can be fully redressed by an award of monetary damages. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974). In the instant case, any loss of income inflicted on plaintiff by the defendants' actions will be temporary and can be compensated fully should she prevail on her claim that the exclusive contract in question is unlawful. If she succeeds, plaintiff will be entitled to an order removing the exclusive contract as an obstacle to her practice of anesthesiology at Columbus Hospital and she will receive (treble) damages compensating her for any loss of income she suffers during the period of her exclusion. Under these circumstances it is irrelevant that plaintiff claims she may be unable to find other employment as an anesthesiologist in the Chicago area. *Sampson, supra*, 415 U.S. at 92 n.68, 94 S.Ct. at 953 n.68; *Ekanem v. Health & Hospital Corp.*, 589 F.2d 316, 321 (7th Cir. 1978) (per curiam) ("Inability to obtain other employment is not considered irreparable harm because a terminated employee has an adequate remedy at law by obtaining a judgment in his favor."). Thus, plaintiff has an adequate remedy at law for any temporary loss of income resulting from the operation of the allegedly unlawful exclusive contract.

The district court also found that plaintiff would suffer injury to her professional reputation as a result of her exclusion from Columbus Hospital, thus impairing her prospects for future employment. In *Sampson, supra*, 415 U.S. at 89, 94 S.Ct. at 952, the Supreme Court expressly rejected the proposition that "either loss of earnings or damage to reputation might afford a basis for a finding of irreparable injury and provide a basis for temporary injunctive relief." (Footnote omitted). We need not

decide whether plaintiff's claim of injury to reputation is controlled by *Sampson,* however, because even if this injury is irreparable it does not support the preliminary injunction issued by the district court.

Plaintiff sought and obtained a preliminary injunction invalidating the exclusive contract, which was the sole basis on which she was denied access to Columbus Hospital. But this injunction cannot redress the claimed injury to her professional standing because the exclusive contract is not the source of that injury. Plaintiff has suffered an injury to reputation not because of the operation of the exclusive contract (such arrangements are, as noted, prevalent among hospitals in the Chicago area) but rather because of the decision by the plaintiff's employer, Associates, to terminate her employment summarily. The relief awarded by the district court is simply incapable of erasing the fact that plaintiff was fired by her employer and it cannot remove the stigma and damage to reputation that often accompanies such a termination of employment.[3] Thus, even if plaintiff's injury to reputation is both real and irreparable, it does not support the preliminary injunction that was granted.[4]

The district court in its decision also found that plaintiff had suffered irreparable injury in that she had been deprived of valuable experience in the practice of anesthesiology. This finding is somewhat ambiguous. If it refers to the loss of experience pending trial or to plaintiff's inability to secure alternative employment in her specialty, temporary relief is precluded by the *Sampson* and *Ekanem* cases previously noted. If the finding refers instead to diminished prospects for future employment because of impaired reputation, preliminary relief from the operation of the exclusive contract is unwarranted because such relief is ineffective. If the finding referred to a deterioration in professional skills pending the outcome of the litigation, however, there might be some basis for a finding of irreparable injury, *see Equal Employment Opportunity Commission v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir. 1980), but plaintiff has neither alleged nor proven an atrophy in her skills. There is consequently no basis for concluding that loss of experience in the practice of anesthesiology constitutes irreparable injury.

For these reasons, we hold that plaintiff has failed to demonstrate that she was threatened with irreparable injury as a result of the operation of the exclusive dealing contract she challenges as unlawful. *Cf. Nelson v. Galesburg Cottage Hospital,* No. 80–1233 (C.D.Ill.), *aff'd mem.,* 657 F.2d 271 (7th Cir. 1981) (excluded anesthesiologist alleging that exclusive contract violated the Sherman Act failed to demonstrate irreparable injury; preliminary injunction denied).

■ We also believe that plaintiff failed to show that the balance of hardships favors issuance of the injunction. The purpose of a preliminary injunction is to preserve the

---

**3.** Plaintiff relies on several cases holding that a termination of employment can cause an irreparable damage to reputation sufficient to warrant preliminary relief. *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3d Cir. 1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980); *Thompson v. Southwest School District,* 483 F.Supp. 1170 (W.D.Mo. 1980); *Assaf v. University of Texas System,* 399 F.Supp. 1245 (S.D.Tex.1975). In each of these cases, however, the requested relief (usually reinstatement) effectively redressed the threatened injury to reputation. In the instant case, by contrast, the relief awarded by the district court cannot prevent the impairment of plaintiff's professional reputation caused by her termination by Associates.

**4.** Since the damage to plaintiff's reputation stems from her discharge by Associates and not from the exclusive contract, there is serious question whether this injury represents "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977); *see also Blue Shield of Virginia v. McCready,* —— U.S. ——, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982); *In re Industrial Gas Antitrust Litigation (Bichan v. Chemetron Corp.),* 681 F.2d 514 (7th Cir. 1982).

status quo pending a final hearing on the merits, *American Hospital Association v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980), but the injunction entered by the district court in the present case goes well beyond this limited purpose and it imposes substantial hardship on the defendants. The preliminary injunction orders the defendants to "abolish and dismantle all vestiges of their unreasonable restraint on competition in the provision of anesthesia services at the Medical Center" and requires each individual member of the Department of Anesthesiology to compete to provide services at the Medical Center.[5] The effect of the preliminary injunction is to deprive Associates of its entire business and to terminate the employment of its nine physician anesthesiologists and twelve nurse anesthesiologists. The injunction allows the physician anesthesiologists to offer their services at the Medical Center yet prohibits them from forming group practices. As for the displaced nurse anesthesiologists, the preliminary injunction order can be read as prohibiting them from rendering anesthesia services at the Medical Center.[6] Thus, a substantial hardship is inflicted by the preliminary injunction on Associates and its employees. The hardship also falls heavily on the Medical Center, which is forced to relinquish the benefits it sought when it adopted the exclusive dealing arrangement—principally, the assurance that needed anesthesia services would be available at all times. The effect of the preliminary injunction may well be a costly delay of surgical procedures at the Medical Center, aggravated by the prospect of replacing the nurse anesthesiologists who played a large role in the performance of anesthesia services under the exclusive contract. We conclude that these significant hardships outweigh the somewhat speculative and in most respects compensable injury plaintiff may suffer if the exclusive contract remains in force pending trial.[7]

Finally, we also conclude that plaintiff failed to show that the preliminary injunction will not have an adverse impact on the public interest. The preliminary injunction effectively invalidates an exclusive dealing arrangement that has been adopted by most hospitals in the Chicago area on the ground that it would promote improved patient care. We would be hesitant in any case to sweep aside such a widespread arrangement for the provision of medical services and we are particularly reluctant where, as in the instant case, we are asked to do so on the basis of an evidentiary record that consists only of a handful of conclusory and contradictory affidavits. We are simply unpersuaded by plaintiff's argument that the open-staff system she espouses will advance rather than disserve the public interest.[8]

---

**5.** Plaintiff proposed to the district court a less sweeping preliminary injunction order than was ultimately entered and she now invites this court to modify the district court's order so that the injunctive relief will permit her to practice anesthesiology at Columbus Hospital without otherwise disrupting the administration of the exclusive contract. We decline to accept this invitation, however, because plaintiff's failure to prove irreparable injury precludes all temporary relief.

**6.** The order provides that assignments for the provision of anesthesia services shall be equitably distributed among members of the Department of Anesthesiology, a group that does not include nurse anesthesiologists.

**7.** Rule 65(c) of the Federal Rules of Civil Procedure requires the district court on a motion for a preliminary injunction to consider whether a successful movant should be required to post a

security bond. *See Reinders Brothers, supra*, 627 F.2d at 54; *Roth v. Bank of Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979). The district court in the instant case did not address in its preliminary injunction order the defendants' request for a bond. Given our disposition, we need not decide whether this omission constitutes reversible error. In addition, we need not consider the defendants' motion to furnish bond in connection with the preliminary injunction, filed in this court.

**8.** Plaintiff relies on affidavits by several anesthesiologists who claim that open-staff systems at the hospitals with which they are associated provide service as good as or even better than exclusive dealing arrangements. The probative value of these affidavits is somewhat diminished in our view by the fact that two of the affidavits concern suburban hospitals, which

**1352**

Because we hold that plaintiff has failed to satisfy three of the four prerequisites to the issuance of a preliminary injunction, we need not rest our decision to vacate the injunction on the fourth factor—reasonable likelihood of success. We hesitate to explore the question of probable success in depth because, as discussed below, this question is inextricably linked to the definition of a relevant market, about which no evidence was presented to the district court. Nevertheless, we add a few comments on this issue because it may assist the district court on remand and because we have some doubt whether plaintiff successfully carried her burden of persuasion on this question.

 The district court properly treated this case as one involving a vertical combination. Such a combination, as the parties concede,[9] must be analyzed under the Rule of Reason. *Tampa Electric Co. v. Nashville Coal Co.*, 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291 (9th Cir. 1982). As its name suggests, the Rule of Reason requires the trier of fact to decide whether under all of the circumstances of the case the restrictive practice imposes an unreasonable restraint on competition. *Arizona v. Maricopa County Medical Society*, —— U.S. ——, ——, 102 S.Ct. 2466, 2471, 73 L.Ed.2d 48 (1982); *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *National Society of Professional Engineers v. U. S.*, 435 U.S. 679, 691, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978) (quoting *Board of Trade v. U. S.*, 246 U.S. 231, 238, 38 S.Ct. 242, 243, 62 L.Ed. 683 (1918)). This court has consistently held that in all section 1 Rule of Reason cases the plaintiff must show that the challenged restraint has an adverse impact on competition in a relevant market. *United States Trotting Association v. Chicago Downs Association, Inc.*, 665 F.2d 781, 790 (7th Cir. 1981) (en banc); *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 268 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982).[10] In the context of exclusive dealing arrangements, this means that the plaintiff can prevail only by showing that the agreement in question results in a substantial foreclosure of competition in an area of effective competition, that is, in a relevant market. *Tampa Electric, supra*, 365 U.S. at 327–28, 81 S.Ct. at 627–628; *Twin City Sportservice, supra*, 676 F.2d at 1301–02.[11]

In the instant case, the district court on the basis of a limited evidentiary record ruled that the plaintiff had met her burden of proof under the Rule of Reason. The

---

arguably do not confront the availability and scheduling problems that inner city hospitals (like the Medical Center) often face.

**9.** Taking a different view of the facts is the American Society of Anesthesiologists, Inc. which, appearing as *amicus curiae*, contends that the conduct of the defendants amounts to a classic group boycott or concerted refusal to deal. Such conduct is traditionally held to be illegal *per se*. Plaintiff did allege a conspiracy or concerted action by the defendants but at this stage of the proceedings the record is devoid of any evidence contradicting the district court's conclusion that the exclusive contract is an instrument of vertical integration and not a horizontal restraint.

**10.** During the hearing on the preliminary injunction motion the district court stated that the burden of proving the reasonableness of the challenged restraint rested on the defendants. Tr. of proceedings of September 2, 1981, at 6. This formulation does not correctly state the law applicable under the Rule of Reason. The plaintiff bears the burden of demonstrating that the restraint is unreasonable. *Lektro-Vend, supra*, 660 F.2d at 265. The district court's written decision did not reiterate this error.

**11.** *Tampa Electric* is applicable to Sherman Act section 1 cases even though it was decided under section 3 of the Clayton Act, 15 U.S.C. § 14 (1976). *Twin City Sportservice, supra*, 676 F.2d at 1304 n.9. Since section 3 relates *only to exclusive dealing contracts for the sale of goods*, plaintiffs seeking to challenge exclusive dealing arrangements for the provision of services must premise their claims on section 1 of the Sherman Act.

court held that the exclusive contract was an unreasonable restraint on competition among "competing providers of anesthesia services at Columbus Hospital." Although it made no express finding, the district court apparently believed that the relevant geographical market was limited to Columbus Hospital.[12] In the district court's view, the exclusive arrangement conferred on Associates a virtual monopoly in this market, leaving Associates free to set prices and determine the quality of services without competitive pressures. In addition, the district court rejected the notion that competition among hospitals could serve as an effective check on the quality and price of anesthesia services rendered by Associates under the contract.

We have serious question whether plaintiff has demonstrated a reasonable likelihood of success on the merits and, in particular, we have reason to doubt whether the relevant market can be sliced so small as to embrace only a single hospital. We are guided in these respects by several recent cases involving similar antitrust challenges to exclusive dealing arrangements in the field of hospital-based medical services. In each of these cases, the plaintiff was unable to prevail on the merits of the antitrust claim asserted.[13] In Harron v. United Hospital Center, Inc., 522 F.2d 1133 (4th Cir. 1975) (per curiam), cert. denied, 424 U.S. 916, 96 S.Ct. 1116, 47 L.Ed.2d 321 (1976), for example, a radiologist was denied the opportunity to practice his specialty at a hospital because it had awarded an exclusive contract to another radiologist. The Fourth Circuit reversed a preliminary injunction issued by the district court in favor of the plaintiff and in addition instructed the district court to dismiss the complaint, which was described as "frivolous." In a similar vein, the court in Smith v. Northern Michigan Hospitals, Inc., 518 F.Supp. 644 (W.D. Mich.1981), rejected the antitrust claim of an excluded physician who attacked a hospital's decision to grant an exclusive contract for the staffing of its emergency room. Awarding summary judgment for the defendant, the court observed that the hospital had articulated legitimate medical and financial reasons for consolidating its emergency room services and that "[a]n exclusive contract permits more control over standards, personnel and procedures." 518 F.Supp. at 648.

The decision we find most closely analogous to the instant case also weakens plaintiff's Sherman Act claim. In Hyde v. Jefferson Parish Hospital District No. 2, 513 F.Supp. 532 (E.D.La.1981), the defendant hospital entered into an exclusive contract for the performance of anesthesia services at the hospital. The plaintiff, an anesthesiologist, was denied hospital staff privileges solely because of the exclusive contract. After trial the court rejected the plaintiff's antitrust claims on the merits.[14] Of particular interest to us are the Hyde court's conclusion that the relevant geographical market extended over an entire metropoli-

---

12. The Medical Center serves approximately 3 percent of all surgical patients treated at hospitals located in Cook County, Illinois, and approximately 4.5 percent of all such patients treated at hospitals located in the City of Chicago. The respective shares of Columbus Hospital are some figures less, in both cases, than these percentages.

13. Contending that the case law is not uniformly contrary to her claim, plaintiff cites Crane v. Intermountain Health Care, Inc., 637 F.2d 715 (10th Cir. 1980) (en banc) and Malini v. Singleton & Associates, 516 F.Supp. 440 (S.D.Tex. 1981). Neither case addressed the merits of the asserted antitrust claims, however, as both involved only jurisdictional issues.

14. The Hyde case involved a claim of unlawful tying, a practice normally condemned as illegal per se. The court nonetheless analyzed the case under the Rule of Reason because it concerned a restraint on the practice of a profession, an area in which the Supreme Court has said that more lenient standards may sometimes apply. See Goldfarb v. Virginia State Bar, 421 U.S. 773, 788–89 n.17, 95 S.Ct. 2004, 2013–2014 n.17, 44 L.Ed.2d 572 (1975). The elaborate inquiry by the court into the market for anesthesia services is thus relevant to the present case even though the specific practices challenged in the two cases would in ordinary circumstances be treated quite differently.

tan area and its findings concerning the pro-competitive effects of exclusive contracts:

A closed department may enhance competition among the hospitals in the market by increasing the quality of medical care available. It may also serve to benefit competition among anesthesiology groups if the terms of the exclusive contracts are not for unreasonable periods of time. Such a system would serve to encourage anesthesiologists to improve the quality of their services in order to obtain these contracts with hospitals.

The Court concludes that the purpose of the exclusive contract is to enhance patient care and its restraint on competition in the field of anesthesiology is minimal.

513 F.Supp. at 541. *See also Robinson v. Magovern*, 521 F.Supp. 842, 919 (W.D.Pa. 1981) (closed-staff system may promote competition among hospitals resulting in improved quality of patient care). Taken together, these cases (especially *Hyde*) cast considerable doubt on the district court's conclusion in the instant case that plaintiff is reasonably likely to succeed on her claim that the exclusive contract violates the Sherman Act.

Should the instant case proceed to trial,[15] the district court should reconsider on the basis of more complete evidence its preliminary finding regarding the relevant market.[16] This inquiry should consider, *inter alia*, whether it is appropriate to regard the

individual patient as the real purchaser of anesthesia services. Because the patient generally takes no part in the selection of a particular anesthesiologist (the surgeon makes the choice), Tr. of proceedings of September 2, 1981, at 10, and because the expense of anesthesia services to the patient is ordinarily at least partially insured or otherwise payable by a third party, it might be somewhat anomalous to treat the patient as a buyer. The patient in these circumstances receives the service but does so without making any significant economic decision.[17] It may thus be more appropriate for antitrust purposes to treat the *hospital* as the purchaser, in view of the hospital's responsibility for assuring the availability of anesthesia services for its patients, its incentive to maximize the use of its surgical facilities and its potential liability for negligent rendition of anesthesia services in its operating rooms. If the hospital rather than the individual patient is regarded as the purchaser, the relevant market could be defined as the area in which Associates operates and in which the Medical Center (rather than the patient) can practicably turn for alternative provision of anesthesia services. *See United States v. Philadelphia National Bank*, 374 U.S. 321, 359, 83 S.Ct. 1715, 1739, 10 L.Ed.2d 915 (1963); *Tampa Electric, supra*, 365 U.S. at 327, 81 S.Ct. at 627. Such a recharacterization of the economic relationships could therefore alter dramatically the definition of the relevant market and with it the lawfulness of the exclusive contract.[18]

15. As noted above, the district court has reserved final decision on whether plaintiff satisfies the jurisdictional requirements for a Sherman Act claim. *See* note 2, *supra*.

16. Of course, the preliminary finding and our dicta concerning the facts are not binding on the district court in a subsequent trial on the merits. *Menominee Rubber Co. v. Gould, Inc.*, 657 F.2d 164, 167 (7th Cir. 1981).

17. We find helpful the comments of one court after a lengthy examination of the market for anesthesia services:

Anesthesiologists rarely have contact with patients prior to their surgery and the evi-

dence suggests that fees are almost never discussed. In fact, patients have little input into the selection of their anesthesiologists and third party carriers pay over 90% of anesthesiologists' fees. There is no evidence of competition between anesthesiologists insofar as patients are concerned; in fact, there is unrefuted evidence that the patient is not truly a customer of the anesthesiologist.

*United States v. American Society of Anesthesiologists*, 473 F.Supp. 147, 160 (S.D.N.Y.1979) (footnotes omitted).

18. For one example of a case in which a recharacterization of buyer and seller resulted in a revised definition of the relevant market, see *Twin City Sportservice, supra*.

On remand, the district court should also reexamine the basis of its conclusion that there is no effective competition among hospitals. This conclusion is in conflict with the result reached after full trial in the *Hyde* case and it is supported only by a citation to a statute suggesting the lack of public knowledge of available health services, 42 U.S.C. §§ 300k(a), 300k–2(b) (1976), and by the district court's own understanding that patients do not compare prices when selecting a hospital. Of course, the thesis of both the *Hyde* and *Robinson* cases was that hospitals compete on a non-price basis to provide the best quality of patient care. Thus, the absence of genuine price competition may not be dispositive. The district court should consider the extent of interhospital competition, of whatever sort. Finally, the district court ought to examine whether the exclusive contract in question promotes competition among hospitals by creating efficiencies and whether it stimulates competition among anesthesiologists to obtain such contracts.

For the reasons stated herein, we hold that the district court abused its discretion when it granted plaintiff a preliminary injunction against the enforcement of the exclusive contract. Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion.[19]

On remand, Circuit Rule 18 shall apply.

VACATED AND REMANDED.

19. In view of our disposition of the case, we have no occasion to consider the defendants' argument that the district court erroneously deprived them of an opportunity for an evidentiary hearing.