TRUCK DRIVERS, OIL DRIVERS, FILL-
ING STATION & PLATFORM WORK-
ERS, LOCAL 705, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN
AND HELPERS OF AMERICA, Plain-
tiffs,

v.

ALMARC MANUFACTURING,
INC., Defendant.

No. 82 C 5873.

United States District Court,
N.D. Illinois, E.D.

Nov. 26, 1982.

Sheldon M. Charone, Carmell, Charone & Widmer, Ltd., Chicago, Ill., for plaintiffs.

David I. Rosen, Clifton, Budd, Burke & DeMaria, New York City, John L. Kienlen, Chuhak, Tecson, Kienlen & Feinberg, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Truck Drivers, Oil Drivers, Filling Station & Platform Workers, Local 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 705") has sued Almarc Manufacturing, Inc. ("Almarc") to enforce an arbitration award. This Court has conducted an evidentiary hearing (the "Hearing") on Local 705's motion for a preliminary injunction to require Almarc to reinstate its 14 fired truck drivers pending the decision on the merits of this action. In accordance with Fed.R.Civ.P. ("Rule") 52(a) this memorandum opinion and order reflects the Court's findings of fact and conclusions of law. For the reasons stated in this opinion, Local 705's motion for a preliminary injunction is granted.

### Findings of Fact ("Findings")

Based on the evidence at the Hearing this Court finds, and therefore also finds that on the ultimate trial on the merits Local 705 has a substantial probability of establishing, that:

1. Local 705 is a labor organization within the meaning of 29 U.S.C. § 152(5), a provision of the Labor-Management Relations Act (the "Act"). Local 705's offices are located within this judicial district.

2. Almarc is a corporation with its principal place of business located at 2201 Lunt Avenue, Elk Grove Village, Illinois, also within this judicial district.

3. Almarc is in the business of manufacturing and distributing petroleum-related

products for the automotive after-market. It is an employer engaged in an industry affecting commerce within the meaning of the Act, 29 U.S.C. § 185.

4. Local 705 and Almarc have been parties to a collective bargaining agreement (the "Agreement"), which by its terms has been effective from November 1, 1979, through October 31, 1982. Under the Agreement Local 705 is the collective bargaining agent of certain drivers employed by Almarc.

5. On August 18, 1982 [1] the drivers represented by Local 705 commenced a strike against Almarc. Almarc responded by discharging each of the striking drivers, 14 in all.

6. On August 19 Almarc commenced an action in this Court (the "*Almarc* suit," No. 82 C 5133) seeking to restrain Local 705 and one of its officers, Louis Pieck, from engaging in or otherwise authorizing picketing, work stoppages and related strike activities in and around Almarc's facilities. Almarc alleged the strike by its drivers violated Article 33 of the Agreement, which provides "[t]here shall be no strike . . . during the term of this Agreement. . . ."

7. On August 19 Judge Nicholas J. Bua [2] issued a temporary restraining order in the *Almarc* suit, enjoining Local 705 from engaging in strike activities in and around Almarc's facilities. On August 24 Local 705 responded by telegraphic notice to Almarc to attend a Grievance Board hearing on August 26 to consider certain unresolved grievances. Article 16 of the Agreement provides for such a procedure in the following terms:

> If any grievance arises during the term of this Agreement and cannot be settled between the parties, then a Grievance Board of Six (6) members, three (3) Company and three (3) Union, shall meet monthly to satisfactorily resolve said grievances. The decisions of the grievance board shall be final and binding on all parties.

8. On August 26 the Grievance Board hearing was held at Local 705's offices. Almarc participated in the hearing under protest and has asserted a number of procedural objections to the proceedings. At the conclusion of the hearing the Grievance Board went into executive session and, by majority vote, reached the following decision and award (the "Award"):

> Upon motion, the Board by majority action holds that:
>
> 1. The Company has seriously and continuously violated the contract
>
> 2. That the Union strike was protected under the circumstances and was not a violation of the contract
>
> 3. That the Company violated the contract and attempted to undermine the Union status
>
> 4. That the Company violated the contract by discharging Lief Jernstad and he should be returned to work and paid for loss wages and for health-welfare and pension
>
> 5. That the Company improperly discharged the drivers when they honored the Union's picket line and/or refused to work and the men should be returned to work and paid for lost wages and for health & welfare and pension
>
> 6. That the Company cannot require the drivers to take lie detector test until they meet with the Union and obtain approval of a lie detector policy to apply in the future

9. Item (5) of the Award requires the immediate reinstatement of all of the striking drivers previously terminated by Almarc. Almarc has refused to comply with the Award, and this action was brought to enforce the Award. Local 705's current

---

1. All dates without year designations are 1982 dates.

2. Judge Bua took that action as emergency judge. Judge Marvin Aspen, to whose calendar the *Almarc* suit had been assigned, was not available at the time.

motion is for a preliminary injunction to compel such rehiring pending determination of the ultimate merits.

10. On August 30 Judge Aspen issued a memorandum opinion and order dissolving the temporary restraining order "[b]ecause the nature of the underlying dispute has shifted since the issuance of the temporary restraining order. . . ." On September 7 Judge Aspen issued a second memorandum opinion and order (the "Opinion," Ex. 1 to this memorandum opinion and order) denying Almarc's motion for a preliminary and permanent injunction against Local 705's strike and picketing activity, and granting Local 705's motion for summary judgment. In reaching that decision, Judge Aspen held the Grievance Board Hearing and Award, followed by Almarc's non-compliance, relieved Local 705 from its no-strike pledge.[3]

11. In response to this action to enforce the Award, Almarc has interposed not only an answer but also a counterclaim asking that the Award be vacated and declared "null, void, and unenforceable." Almarc's like arguments, made before Judge Aspen, were rejected in the Opinion.

12. Six of the 14 drivers discharged by Almarc testified during the Hearing. Their testimony established the following uncontroverted facts:

(a) Each has made substantial and unsuccessful efforts to obtain other regular employment since having been fired by Almarc. None was able to do so. Those who were more fortunate in their efforts had obtained at best short-term part-time employment; others had been unable to obtain any employment at all. Those receiving unemployment compensation were getting $206 per week to sustain themselves, their wives and children.

(b) Each had inadequate income and resources to maintain himself and his family (only one of the testifying drivers was single). With one exception (the sin-

gle individual) each was in default for one or more monthly payments under his mortgage and was in peril of foreclosure proceedings at the option of the mortgagee. In each instance the mortgage payments were substantial (ranging between $430 and approximately $800 per month), each mortgage having been incurred when the employee was a productive wage earner and able to carry such substantial payments.

(c) Each was also at the risk of termination of medical health insurance coverage as of November 1, 1982. None had sufficient income or resources to pay for living expenses (including food, clothing and shelter) for himself and his family and to pay medical insurance premiums.

(d) Even without reference to medical insurance premiums, the income and resources available to the fired drivers did not cover living expenses for themselves and their families.

13. Testimony at the Hearing left substantial doubt as to the ability of the drivers, even if they had funds for that purpose or funds were made available to them, to continue as insureds under Local 705's Health and Welfare Fund (the "Fund") because of contractual limitations applicable to non-employees. Because this Court expressed concern at the Hearing as to the potential lapse of such coverage (see this Court's July 22, 1982 opinion in *Teamsters Local 761 v. Tri-R Vending Service Co.*, No. 82 C 3531), Almarc made arrangements to provide such coverage without lapse (see Ex. 2 to this memorandum opinion and order). This Court has not compared the benefits under the newly-provided coverage with those under the Fund, but these Findings and Conclusions are prepared on the assumption such benefits are comparable. If that is not the case, counsel for Local 705 can so apprise the Court (with a copy of course to opposing counsel).

---

**3.** Agreement Article 33 provides in part:
   If the final decision of the Grievance Board is not lived up to, the aggrieved parties are relieved from the no strike or no lockout pledge made herein.

14. Almarc has hired replacements for the drivers it fired and has also hired a substantial number of additional drivers (its business is seasonal, and the fall and winter seasons are those requiring maximum employment). Before the strike that has given rise to this action Almarc employed approximately 15–20 drivers, while as of the Hearing date it employed 30–35. Only about five replacement drivers had been hired as of the end of August 1982 when the Award was made, all of the other replacements and the additional drivers having been hired since then.

### Conclusions of Law ("Conclusions")

1. This Court has jurisdiction of this action pursuant to Section 301 of the Act, 29 U.S.C. § 185.

2. Local 705's motion must be measured by the traditional criteria applicable to all preliminary injunctions. *Local Lodge 1266, I.A.M. v. Panoramic Corp.*, 668 F.2d 276, 284–89 (7th Cir.1981). Because it is seeking relief for its constituent members (the truck drivers for whose benefit the Award runs), some of the traditional criteria are appropriately rephrased to speak in terms of those individuals rather than Local 705 itself. After such rephrasing, Local 705 has the burden of showing each of the following:

(a) Its driver members will not have an adequate remedy at law or will otherwise be irreparably harmed if the injunction does not issue.

(b) Threatened injury to the drivers outweighs the threatened harm the injunction may inflict on Almarc.

(c) Local 705 has at least a reasonable likelihood of success on the merits of this action.

(d) Granting of a preliminary injunction will not disserve the public interest.

*Santos v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346, 1349 (7th Cir.1982).

3. Reasonable likelihood of success is the "threshold requirement," for a plaintiff's

failure on that issue requires the Court to go no farther in its inquiry. *O'Connor v. Board of Education*, 645 F.2d 578, 580 (7th Cir.1981). On that score the Order may well be binding as a matter of res judicata or collateral estoppel. All or substantially all the arguments Almarc now asserts against the Award were made before Judge Aspen. Certainly all the arguments could have been made there. Judge Aspen had to reject those arguments to grant summary judgment in favor of Local 705 as he did. However, even apart from the legal question as to res judicata or collateral estoppel, which would require further submissions before it could be decided, the same reasons that underpinned Judge Aspen's Order plainly demonstrate Local 705 has at least a reasonable likelihood of success on the merits. This conclusion is reinforced by the limited scope of judicial review of labor arbitration awards. *F.W. Woolworth Co. v. Miscellaneous Warehousemen's Union*, 629 F.2d 1204, 1214 (7th Cir.1980).

■■■ 4. As for the lack of adequate remedy at law or irreparable injury criterion, the starting point in an employee firing case is that stated in *Santos*, 684 F.2d at 1349 (emphasis added):

We note initially that a temporary loss of income does not *usually* constitute irreparable injury because this deprivation can be fully redressed by an award of monetary damages. *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974).

This however is not the "usual" case. This Court's conclusion that the usual rule is inapplicable here is not based on the issue of medical insurance (see *United Steelworkers of America v. Fort Pitt Steel Casting*, 598 F.2d 1273, 1280 (3d Cir.1979) and this Court's opinion in the *Local 761* case), as to which Almarc's post-hearing action has apparently eliminated the irreparable injury factor (assuming comparability of insurance benefits). Instead the conclusion focuses on the drivers' universal showing of current needs that cannot "be fully redressed by an

award of monetary damages" in the future. Those current needs are established by all the evidence before this Court at the Hearing, with every driver confronting potential mortgage foreclosure as well as serious difficulties in sustaining the needs of everyday life. Both *Santos* and *Sampson,* by using the term "usually," imply that there are situations in which a temporary loss of income *can* meet the irreparable injury test. *Gonzalez v. Chasen,* 506 F.Supp. 990, 998 (D.P.R.1980); *Sockwell v. Maloney,* 431 F.Supp. 1006, 1012 (D.Conn.1976); *Becker v. Toia,* 439 F.Supp. 324, 336 (S.D.N.Y.1977); *Caulk v. Beal,* 447 F.Supp. 44, 52 (E.D.Pa. 1977). Under the circumstances of this case the ability to recover damages ultimately is not an adequate remedy at law and does not protect the drivers against irreparable harm.

5. Finding 12 and Conclusion 4 have already reflected the threatened harm to the drivers if preliminary injunctive relief is not granted. Almarc's claimed harm from the granting of an injunction is based on its need to fire drivers hired as replacements. But substantially all that hiring took place *after* the Award. Had Almarc complied with the Award, the present problem would not be before the Court. Almarc is of course entitled to protect and assert its legal position, but it must be viewed as having acted at its peril in hiring the other replacements. And even were it assumed that the preliminary injunction is being issued wrongfully, the potential harm to Almarc is substantially less than the harm threatened to the drivers if the injunction should have been but were not granted. Thus the balancing of harms favors Local 705's position (and that of its drivers).

6. This Court has often had occasion to remark in preliminary injunction cases that it is a rare case in which granting of a preliminary injunction will disserve the public interest. Normally the satisfaction of this fourth consideration flows from the answer to the other three. This case is no exception, for it can hardly be said that satisfying the considerations already dealt with in these Conclusions would disserve the public interest.

7. This Court of course recognizes that the normal purpose of a preliminary injunction is to preserve the status quo and that reinstatement is fairly characterized as an extraordinary remedy in preliminary injunctive terms. *EEOC v. City of Janesville,* 630 F.2d 1254, 1259 (7th Cir.1980). Because of the heavy presumption that supports arbitration awards (*F.W. Woolworth,* 629 F.2d at 1214) and the hardships imposed on the fired drivers by Almarc's conduct found wholly improper by the Award, this Court concludes the extraordinary remedy of reinstatement is appropriately granted here.

\*     \*     \*

All criteria for issuance of a preliminary injunction under Rule 65 have been met. Counsel are directed to proceed as follows:

(1) On or before December 1, 1982 Local 705's counsel shall file (with a copy to opposing counsel) a draft order complying with Rule 65(d) for a preliminary injunction, as prayed in Local 705's motion and approved in this opinion, and a statement as to the appropriate amount of security required to satisfy Rule 65(c).

(2) Within two working days after such filing Almarc's counsel shall file (with a copy to opposing counsel) their comments on Local 705's submission.

This Court will promptly issue the formal preliminary injunction order in accordance with this opinion.

EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALMARC MANUFACTURING, INC., )
)
)
Plaintiff, )
)
v. ) NO. 82 C 5133
)
TRUCK DRIVERS, OIL DRIVERS, FILLING STATION )
AND PLATFORM WORKERS' UNION, LOCAL NO. 705, )
an affiliate of the INTERNATIONAL BROTHERHOOD )
OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN, )
AND HELPERS OF AMERICA, and LOUIS PIECK, )
Individually and as )
)
)
Defendants. )

---

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff, Almarc Manufacturing, Inc. ("Almarc"), brought this action to restrain defendants, Truck Drivers, Oil Drivers, Filling Station and Platform Workers' Union, Local No. 705 ("the Union") and Louis Pieck, President of the Union, from engaging in or otherwise authorizing picketing, work stoppages and related strike activities in and around Almarc's facilities in Elk Grove Village and Bensenville, Illinois. Almarc argues that the Union should be enjoined from, engaging in such activities because the collective bargaining agreement between the parties expressly provides that "[t]here shall be no strike or lockout during the term of this Agreement. . . ." Article 33. Presently before the Court is Almarc's motion for a preliminary and permanent[1] injunction and the Union's motion to dis-

miss the complaint.[2] For the following reasons, the Union's motion will be granted and, accordingly, Almarc's motion for preliminary and permanent injunctive relief will be denied.

On August 19, 1982, District Judge Nicholas J. Bua, as emergency judge, issued a temporary restraining order enjoining the Union from engaging in strike activities in and around Almarc's facilities. This Court dissolved that order eight days later on the premise that "the circumstances underlying this dispute have changed substantially" since August 19th. *See Almarc v. Truck Drivers, Oil Drivers, Filling Station and Platform Workers' Union, Local 705,* 82 C 5133, p. 2 (N.D.Ill. August, 30, 1982). Specifically, the Court concluded that the rationale as well as the legal authority underlying Judge Bua's order was no longer applicable because the dispute between Al-

---

1. Although the papers submitted by Almarc purport to argue the propriety of a preliminary injunction. Almarc represented to the Court on September 1, 1982, that all of the evidence had been submitted, that this motion should be treated as one for a permanent injunction and that all the issues in this cause may now be adjudicated by the Court.

2. Since defendant is relying upon matters outside the pleadings, this motion will be treated as a motion for summary judgment. Almarc has had full and fair opportunity to present evidence in response to this motion during the course of this Court's hearing on Almarc's motion for a preliminary and permanent injunction. As discussed *infra,* Almarc's motion for injunction is simply the mirror image of the Union's motion for summary judgment.

marc and the Union had shifted from charges of contract violations to charges of unfair labor practices.[3] The original strike could be enjoined under authority of *Boys Markets, Inc. v. Retail Clerk's Union, Local 770,* 398 U.S. 235, 253–55, 90 S.Ct. 1583, 1593–94, 26 L.Ed.2d 199 (1970); the latter strike could be enjoined only under the strict standards of the Norris-LaGuardia Act. 29 U.S.C. § 101 *et seq.* (1976).

Notwithstanding this Court's decision to dissolve the temporary restraining order, both parties have submitted evidence relating to the contractual dispute in connection with Almarc's motion for a preliminary and permanent injunction and the Union's motion for summary judgment. Because the complaint upon which the Union has moved for summary judgment seeks only mandatory and prohibitory injunctive relief, the two motions before us are equivalent to cross motions for summary judgment. The threshold issue common to both motions is whether Almarc's refusal to abide by the decision of a Grievance Board ("the Board"), purportedly convened under authority of the parties' collective bargaining agreement, relieves the Union of its contractual no-strike pledge and thereby removes the premise of Almarc's claim for injunctive relief.

Article 16(1) of the collective bargaining agreement provides that:

> If any grievance arises during the term of this Agreement and cannot be settled between the parties, then a Grievance Board of six (6) members, three (3) Company and three (3) Union, shall meet monthly to satisfactorily resolve said grievances. The decisions of the grievance board shall be final and binding on all parties.

Neither Almarc nor the Union dispute that a Board purporting to exercise authority under this provision was convened on August 26, 1982, to resolve the contractual issues precipitating the Union's initial strike. By majority vote, this Board held that "the company has seriously and continuously violated the contract." Accordingly, the Board ordered Almarc to reinstate the employee whose discharge set off the initial strike and those employees who were discharged because they participated in the strike or honored the picket line. Defendants' Exhibit 1. When at least some of those previously discharged employees attempted to return to work on August 27, 1982, Almarc representatives refused to reinstate them. Under Article 33 of the collective bargaining agreement, "[i]f the final decision of the Grievance Board is not lived up to, the aggrieved parties are relieved from the no strike or no lockout pledge made herein." Having thus been relieved of its no-strike pledge, the Union argues that its striking activity is beyond the reach of *Boys Markets* and, thus, cannot be enjoined.

Almarc argues, on the other hand, that the method of selecting Board members as well as the "circus-like" procedures utilized by the Board in the course of the grievance hearing did not comply with the collective bargaining agreement. The decision rendered by the Board, therefore, could not

---

**3.** Almarc notes its disagreement with this conclusion in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss where it argues that such a holding "will enable *every* striking union to avoid the reach of a *Boys Market* injunction merely by changing the language of its picket signs . . . ." Memo. at p. 4. This argument overlooks two important considerations. First, in the present case, the unfair labor practice charges were filed with the NLRB at least one full day *before* Almarc obtained the temporary restraining order. This would suggest that the unfair labor practice dimension to this case is not a mere sham intended solely to circumvent the injunctive relief sought by Almarc. Second, as this Court's earlier ruling on the contempt issue makes clear, no striking union can avoid the reach of a *Boys Markets* injunction with impunity until it *first* convinces a court that its unfair labor practice charges are asserted in good faith. To the extent those charges are asserted in good faith, the union should not be deprived of the opportunity to resort to its full range of economic strategies by a prior injunction premised on an entirely different set of facts.

have been binding and could not have relieved the Union of its no-strike pledge. At the very least, Almarc contends, there is a material issue of fact remaining as to the proper composition and procedures of a grievance board convened under the collective bargaining agreement. In the context of the present dispute, however, Almarc's arguments are not persuasive.

The Union offered evidence that the Almarc grievance hearing was conducted by a board regularly constituted under the collective bargaining agreement. The three "company" members of the Board were representatives of three major companies within the petroleum products industry. Through its president, Alvan Rubin, Almarc offered evidence that although it had no experience with grievance procedures under the agreement, the company "believed" that the agreement afforded it the right to appoint three members to the Board. Almarc's unsupported belief does not, however, place the propriety of the Board's composition into issue. Insofar as this collective bargaining agreement, like most others, was negotiated by employer representatives within the industry on behalf of employers like Almarc, the meaning and intent of the agreement can only be gleaned from the regular practice in the industry. In the present context, the only evidence relating to industry practice was presented by the Union to establish that the Board which heard the Almarc grievance was selected in compliance with that practice.

Similarly, the Union offered evidence that the Almarc grievance hearing was conducted in compliance with the regular procedures of the Board. Almarc's objections to those procedures do not place the meaning of the collective bargaining agreement into issue. Accordingly, the Court must conclude that the procedures afforded Almarc at the Board hearing on August 26, 1982, complied with the collective bargaining agreement.

Almarc's objections to the makeup and procedures of the Board are also intended to establish that the grievance hearing, even if conducted in compliance with the agreement, was a sham. To the extent the collective bargaining agreement permits such hearings, Almarc argues that the agreement is illusory. Although those procedures may leave much to be desired, the Court is not prepared to find that the composition and operation of the Board was a sham. Almarc signed the collective bargaining agreement and, for better or worse, consented to be governed by its terms.

Having found that the makeup and operation of the Board complied with the collective bargaining agreement, the Union is relieved from its no-strike pledge. Almarc cannot, therefore, enjoin the Union's striking activity on the basis of the complaint filed before this Court. Accordingly, the Union's motion for summary judgment is granted and Almarc's motion for a preliminary and permanent injunction is denied.[4] It is so ordered.

4. Still pending before this Court is a rule to show cause why the Union should not be held in contempt for its apparent defiance of Judge Bua's temporary restraining order. The parties are directed to prepare a joint pretrial order to be presented at this Court's status call on October 8, 1982, at 10:30 a.m. This Court's pretrial order form may be modified to present the issues to be heard by the Court on a date to be set at the October 8 status hearing. It is so ordered.

**1178**

EXHIBIT 2

CLIFTON BUDD BURKE & DEMARIA

420 LEXINGTON AVENUE, NEW YORK, N.Y. 10170

212–687–7410

THOMAS W. BUDD
EDWARD J. BURKE
ALFRED T. DEMARIA
CARLYLE M. DUNAWAY, JR.
KEVIN J. MCGILL
HOWARD G. ESTOCK

DAVID I. ROSEN
ROBERT A. WIESEN
ERIC S. LAMM
RICHARD K. MUSER
DAVID F. HORAN
S. LEE SHEEHAN

HENRY CLIFTON, JR.
THOMAS A. BRENNAN, SR.
COUNSEL

ELECTRONIC DOCUMENT
COMMUNICATIONS
212–687–3285

October 29, 1982

FEDERAL EXPRESS

The Hon. Milton I. Shadur
Judge, United States District Court
United States Courthouse, Room 2325
219 South Dearborn Street
Chicago, Illinois 60604

Re: Teamsters Local 705 v. Almarc Mfg., Inc.
Civil Action No. 82–C–5873

Dear Judge Shadur:

This letter will confirm my telephone conversation of this afternoon with your law clerk, Richard Levy.

I have been advised by Mr. Robert Buehler, General Operations Manager of the Defendant, that as of this afternoon, all of the discharged drivers who are the subject of the instant lawsuit have been covered by a medical insurance plan. The premiums for such insurance are being paid directly by the company.

This action has been taken by the company solely on a voluntary basis, and without prejudice to the positions it has taken in connection with Plaintiff's motion for a mandatory preliminary injunction, merely to ensure continuity in the discharged drivers' medical insurance coverage. As you know, the drivers' coverage under the union's health and welfare plan would have lapsed as of October 31, 1982. Had the company waited any longer, it might not have been possible to cover the drivers without a break of some duration in their insurance benefits.

The Defendant repeats its request that the union be ordered either to post a bond sufficient in amount to secure the premium payments being made by the company on the drivers' behalf, or that it be ordered to repay the premiums in the event the company prevails on the merits of the action.

By letter dated October 29, 1982, Mr. John Kienlen, co-counsel for the Defendant in this action, forwarded to the Court a copy of Almarc's "Employee Insurance Plan," which describes in detail the nature of the insurance coverage. I have also been advised by Mr. Buehler that it became necessary for the company this afternoon to secure such insurance coverage from the State Mutual Insurance Company rather than from the Bankers Life Company which issued the insurance plan descriptive booklet currently in the hands of the Court. Mr. Buehler advises me that the only substantive difference between the Bankers Life Insurance plan and the State Mutual plan is that the latter does not cover routine physical examinations. In all other respects, he believes that the insurance coverage is the same.

Defendant submits that under these circumstances, the Plaintiff can no longer

claim that it is suffering any "irreparable injury" and thus, it's motion must be denied by the Court.

Respectfully yours,
Clifton Budd Burke & DeMaria
/s/ David I. Rosen
by: David I. Rosen

DIR/ls

cc: John L. Kienlen, Esq.
Sheldon M. Charone, Esq.