**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 1900, Plaintiff,**

v.

**POTOMAC ELECTRIC POWER COMPANY, Defendant.**

Civ. A. No. 86–0717.

United States District Court, District of Columbia.

March 25, 1986.

Elihu I. Leifer, Peter J. Petesch, Sherman, Dunn, Cohen, Leifer & Counts, P.C., Washington, D.C., for plaintiff.

Eric A. Sisco, Francis L. Casey, III, Morgan, Lewis & Bockius, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

OBERDORFER, District Judge.

This action is brought by the union of electrical workers employed by the Potomac Electric Power Company (PEPCO). On March 18, 1986, Judge Harold Greene heard, and granted, plaintiff's application for a temporary restraining order. The action is now before the Court on plaintiff's motion for a preliminary injunction. Pursuant to the Norris-LaGuardia Act, 29 U.S.C. § 107 (1982), the Court has heard testimony and received documentary evidence relevant to the motion.

The parties do not dispute that PEPCO unilaterally put into effect on March 13, 1986, written drug and alcohol rules which superceded the company's previous policy. The parties also do not dispute that plaintiff has filed two specific grievances relating to PEPCO's drug and alcohol policies, which PEPCO has agreed to arbitrate: one regarding several specific employee drug and alcohol screening procedures, which was filed before imposition of the new rules; and one directly contesting the validity of the new rules, which was filed on March 13, 1986, the day the rules were issued.

When the parties have agreed to arbitrate a dispute, a court may issue an injunction if, in addition to the usual equitable concerns, the integrity of the arbitration process would be threatened absent interim relief.[1] *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970); *Aluminum Workers International Union, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 443 (6th Cir.1982); *Local Lodge No. 1266, International Assoc. of Machinists and Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 283 (7th Cir.1981); *Columbia Local, American Postal Workers Union v.*

*Bolger*, 621 F.2d 615, 618 (4th Cir.1980); *Lever Brothers Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115, 123 (4th Cir.1976). Temporary loss of employment by the employees represented by a plaintiff union does not usually threaten the integrity of the arbitral process, since back pay and reinstatement can in most instances provide complete relief. *Aluminum Workers, supra,* 696 F.2d at 444; *see Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166 (1974); *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* 684 F.2d 1346, 1349 (7th Cir.1982). But, if a union can demonstrate that its members have special current needs which could not be fully redressed by an arbitral award, preliminary relief can be justified. *Truck Drivers, etc. v. Almarc Mfg., Inc.,* 553 F.Supp. 1170, 1173–74 (D.C.Ill.1982).

Dispute in this action centers first on whether, after imposition of the rules on March 13, 1986, the union is threatened with new injuries which it did not suffer under the previous company drug and alcohol policy; and second, whether any such new injuries will frustrate or vitiate the arbitral process. Defendant claims that the rules merely codify past practices. Plaintiff alleges that the new rules are significantly more intrusive and severe than past practices, and that the union and its members will suffer irreparable harm if the new rules are enforced prior to arbitration. Specifically, plaintiff's interprets the new rules to be different from the company's previous drug and alcohol policy in the following respects: (1) that they impose penalties more swiftly and more severe than those imposed under the previous policy; (2) that they permit random testing and searches of the person; and (3) that they allow the company to test and search individuals at whim and without cause.

---

1. Even the case cited by defendant in support of its argument that this Court has no jurisdiction to enter a preliminary injunction, *Buffalo Forge v. United Steelworkers of America*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), recognizes this exception. According to the Court:

> [A]side from the enforcement of the arbitration provisions of contracts, ... the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-LaGuardia Act.
> 428 U.S. at 409, 96 S.Ct. at 3148.

■ The only difference between the old policy and the new rules which defendant concedes is that, unlike the previous policy, the new rules impose the potentially harsher penalty of discharge on the first offense in the following circumstances: a positive test for "hard" drugs, e.g., heroin; corroborated positive testing for marijuana; or refusal by an employee to submit to a test. Despite these changes, however, loss of employment of union members, and the concomitant inconveniences and hardships, alone do not "represent the type of harm that, by its occurrence, threatens the integrity of the arbitral process." *Aluminum Workers, supra,* 696 F.2d at 444. Here, the company may not discharge an employee who has tested positive until it has afforded a hearing in the form of a grievance. *Cf. Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (public employer context); *Jones v. McKenzie,* 628 F.Supp. 1500 (D.D.C.1986) (same). Moreover, the grievance is arbitrable on an expedited basis. While the arbitration will not suspend the discharge, the arbitrator can award backpay and order reinstatement. Thus, preliminary relief is not required or justified to prevent nullification of the arbitration process on account of a threat that employees may be discharged.

■ The change in penalties does not impose any other type of injury on the union or employees which would frustrate or vitiate arbitration. Plaintiff concedes that under the previous policy, the company would impose some level of discipline for a drug-related activity or failure to submit to a test. In contrast to discharge, the penalty previously might have been suspension or probation. This difference in the level of punishment, however, does not significantly affect the non-monetary injuries allegedly suffered by employees due to PEPCO's drug and alcohol policy, e.g., the stigma or humiliation suffered due to a drug-related disciplinary action. The enhancement of penalties does not materially change the effect on an employee's reputation which would be affected by some lesser penalty, such as suspension in accordance with the pre-March 13 practice. Therefore, the enhancement of penalty alone does not threaten injury sufficient to warrant a preliminary injunction pending arbitration. *See Aluminum Workers, supra,* 696 F.2d at 444.

Plaintiff's other two concerns affect the scope of permissible drug testing at PEPCO, and relate to the potential invasion of privacy and fear of unjustified discharge which plaintiff alleges may occur as a result of the new rules. At the preliminary injunction hearing on March 25, 1986, defendant represented that it would abide by certain conditions in implementing the new drug and alcohol rules pending an arbitration decision on the new rules. These conditions make explicit that the company will continue to adhere to certain previous practices which protected the employees' privacy and employment rights. These conditions are as follows:

1. PEPCO will not engage in generalized random testing for drugs and alcohol, except as to employees on disciplinary probation. The only possibility of PEPCO's future use of random testing would occur in compelling circumstances, and the company would give plaintiff seventy-two (72) hours notice before implementing any such procedure.

2. PEPCO will not randomly search employees' persons. The only possibility of PEPCO's future random searches of employees' persons would occur in compelling circumstances, and the company would give plaintiff seventy-two (72) hours notice before implementation of such action.

3. PEPCO will abide by the Drug and Alcohol Testing Procedures issued by the company on March 13, 1986 (Defendant's Ex. 2). According to these procedures, PEPCO will:

(a) conduct confirmatory testing of all tests which show positive for controlled substances. The required con-

firmatory test will be the GCMS[2] test in every instance;

(b) abide by the established procedures which ensure the confidentiality of employee test results, except that the test may be used in an arbitration proceeding regarding the employee's discharge; and

(c) abide by the established chain-of-custody procedures.

4. Drug testing will occur only under the following circumstances:

(a) upon reports of drug or alcohol use or abnormal potentially dangerous behavior from police, customers, or employees;

(b) when visual observations of an employee suggest that he may be unfit for duty;

(c) upon medical information such as "track" marks;

(d) where management has reason to believe that an employee is in possession of drugs or alcohol;

(e) as part of a disciplinary probation for employees who have violated the Company's drug and alcohol rules; and

(f) otherwise where the Company has cause.

5. Pursuant to Articles 17 and 18 of the collective bargaining agreement between the union and PEPCO, any employee to be discharged shall receive a 5-day suspension, and a hearing and expedited arbitration of a grievance regarding the discharge if requested.

■ These conditions constitute an admission by the defendant in this Court admissible in any arbitration proceeding regarding the validity of a drug-related disciplinary action occurring between March 25, 1986 and an arbitral decision regarding the validity of the rules issued March 13, 1986. These representations by defendant guarantee that the scope of testing of PEPCO employees will remain essentially unchanged from the policy prior to March 13, 1986 pending an arbitral decision, and should dispel plaintiff's fears arising from the potentially broad language of the new rules. Because no new injuries, other than temporary loss of employment, are threatened as a result of the rules, an arbitrator's freedom to decide on their validity and provide appropriate relief is unaffected by this decision.

■ Here, preliminary equitable relief is not justified under the "narrow exception" to the anti-injunction policy of the Norris-LaGuardia Act established by the Supreme Court in *Boys Markets, Panoramic Corp., supra,* 668 F.2d at 280, because the company's representations assure that an injunction to maintain the *status quo* is not necessary to assure the integrity of the arbitral process. This ruling is not to be construed in any respect as indicating the Court's views on the merits of the issues raised and is not intended to have any implication for the arbitrator. The responsibility for determining the validity of the rules is committed by agreement to the arbitrator. Accordingly, it is this 25th day of March, 1986, hereby

ORDERED: that plaintiff's motion for a preliminary injunction pending arbitration should be, and hereby is, DENIED, without prejudice to, among other things, any application which plaintiff may file for relief on account of actual or threatened violation of these representations. This Memorandum and Order is entered in strict reliance on the representations made by defendant in open court and recited herein.

---

**2.** This acronym stands for gas chromatography-mass spectrometry.