OIL, CHEMICAL AND ATOMIC WORK-
ERS INTERNATIONAL UNION, AFL–
CIO, and its Local 2–124, Plaintiffs,

v.

AMOCO OIL COMPANY (CASPER
REFINERY, WYOMING),
Defendant.

No. C86–354.

United States District Court,
D. Wyoming.

Nov. 10, 1986,
Nunc Pro Tunc Jan. 22, 1987.

Richard Rideout & Steve Freudenthal, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, Wyo., John W. McKendree, Denver, Colo., for plaintiffs.

Donald J. Horton, Robert M. O'Connell, Chamberlain, Hrdlicka, White, Johnson & Williams, Houston, Tex., Richard Williams, Casper, Wyo., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHNSON, District Judge.

The plaintiff, Oil, Chemical and Atomic Workers International Union, AFL–CIO, and its Local 2–124, the union, filed its complaint for declaratory relief and injunctive relief, on October 8, 1986, including its claims for mandatory injunctive relief, to preserve status quo pending arbitration. It seeks a temporary restraining order and preliminary injunction enjoining the defendant Amoco Oil Company (Casper Refinery, Wyoming), from full implementation of the Amoco Oil Company drug and alcohol abuse testing program, which was announced by the company to the employees on September 10, 1986. Plaintiff's Exhibits 5 and 6. The company voluntarily agreed to delay implementation of the program until November 1, 1986. On October 21, 1986, an evidentiary hearing was conducted before this Court. The Court received exhibits and heard testimony of witnesses and after having heard the arguments of counsel, has determined that the plaintiff's motion for injunctive relief should be denied.

The company considered implementation of an alcohol and drug control policy for a substantial period. The first communication to the union relative to the policy is reflected in plaintiff's Exhibit 2, a letter addressed to Mr. Stanhope, the refinery manager on May 27, 1986, by Fred Trujillo, president of Local 2–124. This correspondence contains a number of questions directed to management from the union with regard to the policy under consideration. A written response was assembled by the company in an attempt to answer and explain the considerations of the company at that time. Plaintiff's Exhibit 3. Illustrative of the continuing disagreement and concerns of the union is the correspondence of Mr. Trujillo to Mr. Stanhope dated August 4, 1986. Plaintiff's Exhibit 4. That letter reflects a concern of the union that very low levels of the presence of a drug will be sufficient to establish a positive test which may result in adverse action against

an employee; that complete information as to procedural guidelines for supervisory personnel had not been furnished; and that the company's proposed policy would adversely impact on the private lives of the employees. During this same period, monthly meetings between the union and company management occurred. In spite of the disagreement between the parties the company announced its policy to the employees of the Casper Refinery on September 10, 1986. According to Mr. Harp, the company and the union discussed the program in five meetings of two hours each. The company representative was Mr. Kamprath, the human resources manager. Plaintiff's Exhibits 5 and 6. The parties continued to discuss the program but failed to agree as to the express provisions for implementation of the program. The union commenced a grievance under the collective bargain agreement on October 8, 1986. Plaintiff's Exhibits 7, 8, and 9. The grievance reflects the view of the plaintiff that the program is "unfair, unjust, capricious, and arbitrary." Plaintiff's Exhibit 9. On October 20, 1986, correspondence addressed to the president of Local 2–124 from Mr. Kamprath reflects the company's denial of the union's grievance. Defendant's Exhibit A. The letter of Mr. Kamprath states from the company's point of view what took place between the union and management in the grievance process.

There is little disagreement that health and safety of employees is a concern in the refinery industry, and there is no dispute that persons operating equipment on company premises or making judgments about work to be performed on the premises, if, under the influence of drugs or alcohol, would pose a hazard to themselves, to fellow employees, and to the public. However, there is no history of industrial accidents at the Casper Refinery which were proven to have been related to alcohol or drug impairment. Both parties agree that the dispute as to implementation of the program is subject to arbitration in accordance with Article II of the collective bargaining agreement between the parties, which became effective on January 8, 1986,

for the period through January 31, 1988, and which was executed "in order to establish and maintain a harmonious relationship between the company and its employees and to provide an amicable method of settling any differences or grievances which may arise between the company and its employees." Plaintiff's Exhibit 1 at p. 1. The parties apparently agree that the dispute existing concerning the drug and alcohol testing program is subject to arbitration pursuant to § 2:9 B of the agreement, which provides:

"Arbitration of issues shall be limited to interpretation and/or application of the terms or provisions of this Agreement, written side agreements, or disputes concerning the discipline or discharge of employees and disputes involving the rates of pay for new or substantially changed jobs." Plaintiff's Exhibit 1 at p. 11.

Procedurally the plaintiffs are seeking to have arbitration between the parties proceed as an expedited matter. However, § 2:9A of the agreement sets forth procedures and time limitations governing arbitration by and between the parties, and there is no provision in the agreement for "expedited" arbitration. The parties through counsel have assured the Court that they will proceed expeditiously with the arbitration proceedings in accordance with the agreement.

The program in its barest outline applies to virtually all employees of the company, who may have an impact upon the company operations and safety of employees, including supervisory personnel. Apparently the only employees who are not subject to testing are clerical personnel. The tests will be administered to all applicants for employment, who the Court understands are not at the time of their application a group to be considered as represented by the union pursuant to the agreement. Plaintiffs' Exhibit 1. All employees within the group to be tested would be screened for drugs and alcohol as part of their mandatory physical examinations. In terms of intrusion upon the employee, it is apparent that

no greater physical intrusion would be occasioned during the mandatory physical examinations since fluids that are normally and usually taken during periodic examinations would be screened for the presence of drugs or alcohol. Plaintiff's Exhibit 3. The final group of employees, hopefully small, who will be subject to testing are those who have demonstrated cause for belief that they are at work under the influence of alcohol or drugs or those whose job performance reflects patterns suggestive of alcohol or drug use affecting work and work attendance. The union has expressed a concern as to testing both during mandatory physical examinations, but especially it objects to tests administered on the basis of cause, as well as to periodic, unannounced testing of individuals who have previously tested positive for the presence of unlawful drugs.

The samples collected under the testing program will be analyzed at an independent laboratory, selected by the company, which will first administer a general screening to the samples. Those samples having a negative screening will be deemed to have "passed" the test and no further testing of them will be conducted. Samples testing positive on the first screening will be subjected to testing by gas chromatography/mass spectrometry. Those individuals who are found to test positive, will be offered a rehabilitation program without personal expense, subject to the drug treatment plans available to employees for sickness, disability, and comprehensive medical expenses. The plaintiffs have presented an affidavit of Dr. David Johnson, M.D. who is critical of the testing protocol as well as the reasons for it. With regard to drugs that may stay in the body for a long period of time, he expresses concern as to whether or not the testing will reflect presence of the drug which does not impair job performance; and for this reason, disputes the cut-off points or values employed by the company through its testing laboratory. Affidavit of Dr. Johnson at p. 10.

The plaintiff has come to this court alleging that the Court has power to order arbitration pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; however, there does not appear to be an issue as to whether the implementation of the testing program is an arbitral matter, since defendant agrees that it is. The issue appears to be whether or not the granting of equitable relief in the form of an injunction in this instance violates the policy expressed in the Norris-LaGuardia Act at Title 29, U.S.C. § 104, which contains the general anti-injunctive rules applicable to the Courts of the United States. An exception to § 104 was crafted by the United States Supreme Court in *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Boys Markets case involved a dispute between the union and the company concerning employees who could stock shelves. The collective bargaining agreement by and between the parties in Boys Market contained a provision for mandatory arbitration. Nevertheless, the union engaged in work stoppage activity in violation of its express contractual provision. At 398 U.S. 253, 90 S.Ct. 1593-94 of the opinion, the Court concluded:

"... [T]herefore, that the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, that the purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy, and consequently that the Norris-LaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case."

The supreme court adopted the dissent of *Sinclair Refining Co. v. Atkinson*, 370 U.S. 195, 228, 82 S.Ct. 1328, 1346, 8 L.Ed.2d 440 (1962) as the *guideline* to trial courts with regard to injunctive relief where grievance adjustment procedures are available.

"When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the district court may

issue no injunction order until it first holds that the contract does have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the district court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance."

The rules with regard to granting injunctive relief have been expanded beyond the narrow scope of Boys Markets to include the complex relationships between companies and their employees. The rule was employed in *Hoh v. Pepsico, Inc.*, 491 F.2d 556 (2nd Cir.1974) when a dispute arose over the closing of the employer's brewery and the union sought to defer closing until arbitration was completed in order to preserve the jobs of the employees. In *Lever Brothers Company v. International Chemical Workers Union*, 554 F.2d 115 (4th Cir.1976) the injunctive action sought equitable relief with regard to company plans to relocate a plant. Cancellation of hospital and insurance benefits for employees was at issue in *United Steel Workers of America v. Ft. Pitt Steel Casting, Div. of Conval-Penn., Inc., Etc.*, 598 F.2d 1273 (3rd Cir.1979). The request for injunctive relief here is a situation where the party seeking relief goes beyond the strike or work stoppage situation of *Boys Markets,* which was found to threaten the arbitral process that congressional policy was designed to protect.

Having noted in the agreement of the parties that the dispute concerning the testing program is subject to arbitration pursuant to the collective bargaining agreement, the Court must examine the traditional, equitable principles governing injunctive relief. *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594. The plaintiff describes these considerations as being: (1) The plaintiff's likelihood are prevailing on the merits; (2) the threat of an irreparable injury to the plaintiff in the absence of injunctive relief; (3) the possibility of substantial harm to other interested parties from injunctive relief; and (4) the interests of the public. *Gennaro v. Rosenfield*, 600 F.Supp. 485 (S.D.N.Y.1984). Additional consideration suggested by the defendants are that the action of the company must pose a threat to the arbitration process itself, which appears to be another way of stating that the collective bargaining agreement requiring mandatory arbitration should not be frustrated by the parties. With the agreement of the parties that the issue here is subject to collective bargaining, destruction of the arbitration process does not appear to be a genuine threat.

As to the likelihood of prevailing on the merits, the plaintiff contends that the action of the company is contrary to Appendix B of plaintiff's Exhibit 1, which provides for offenses for which an employee may be demoted, suspended, or discharged without prior notice as follows:

8. Introduction, possession, or use of intoxicating beverages or narcotics on the Casper Refinery, or reporting for duty while under the influence of intoxicating beverages or narcotics.

The plaintiff notes that the level for which certain drugs will be tested may be below that which would reflect being present for work under the influence of the narcotic or drug. The plaintiff further contends that Article XII of the Agreement provides for a Joint Labor-Management Health and Safety Committee. The plaintiff submits that any drug testing program should be considered by the committee. The joint committee is a recommending body only. Section 12:8 at p. 66 of plaintiff's Exhibit 1 provides:

"The joint committee shall meet as often as necessary, but not less than once each month at a regularly scheduled time and place, for the purpose of considering, inspecting, investigating, and reviewing

health and safety conditions and practices. Union committeemen shall have the right to investigate accidents in accordance with the procedures established by the committee. The joint committee shall make instructive recommendations with respect thereto, including but not limited to the implementation of corrective measures to eliminate unhealthy and unsafe conditions and practices and to improve existing health and safety conditions and practices."

Section 12:10 of the agreement, plaintiff's exhibit 1, refers disputes arising with respect to the application of provisions governing the joint committee to the grievance and arbitration procedures contained in the collective bargaining agreement. It appears to the undersigned that the union has made a sufficient showing that with regard to particular issues surrounding the drug and alcohol testing program that changes to the program may be suggested by the arbitrator and that conflicts between the parties may be resolved during the arbitration process.

The plaintiff asserts that irreparable injury results if the testing program is implemented on November 1, 1986. Plaintiff claims first that blood tests and urinalysis, not based upon probable and just cause, will subject all employees required to be tested to groundless invasions of privacy which cannot be reversed. The policy in its present form calls for testing and urinalysis based upon probable and just cause except in the case of employees who are subject to an annual physical. Blood and urine testing has been common during mandatory physical examinations for other purposes related to the fitness of the employee to perform duty. With regard to privacy of the employee, it would appear that remedies exist pursuant to the grievance procedures available to employees under the agreement. It is not currently possible to assess the extent and nature of alcohol and drug use on this job site for the reason that persons using drugs and alcohol are not likely to openly exhibit that use. As noted in the affidavit of Peter B. Bensinger, defendant's Exhibit B on p. 4, paragraph 8, "studies have shown that drug use causes accidents on the job to occur over three time more often, that employees using drugs are absent 2½ times more often, and that company medical costs are triple for the drug user." He further noted that marijuana use has been linked to deficits in job performance where there is a need for hand-eye coordination, depth perception, judgment, and mental and physical skills necessary in many industrial assignments.

The union contends that if information concerning positive tests is not treated as confidential information, that the employee will suffer stigma and certainly face job-related and possibly other consequences. It is without doubt that drug and alcohol testing programs are confrontational. Information concerning positive tests may very well be transmitted to supervisors, who will have responsibility to make fair decisions as to the employee. While acknowledging that the employee would have the opportunity to proceed through the grievance process concerning this matter, the plaintiffs contend that an arbitrator cannot award damages for the injury suffered by an employee who is wrongfully or incorrectly tested as positive for the presence of drugs or alcohol. However, an employee would be subject to reinstatement and compensation for lost income.

Finally, the Court notes that counsel for the company has on the record made certain assurances concerning the administration of the testing program during the arbitration process. These assurances satisfy the Court that employees, who are tested and found to be positive for drugs under the program will have an adequate opportunity to preserve evidence for subsequent determination by grievance or arbitration procedures. The plaintiff has failed to establish the requisite element of irreparable harm necessary for the granting of equitable relief. For this reason, injunctive relief should be denied. See *Oil, Chemical and Atomic Workers, Local 6–10, AFL–CIO v. Amoco Oil Co.*, — F.Supp. — Civil No. A–1–86–186, October 27, 1986;

**6**

*Electrical Workers Local 1900 v. PEPCO,* 634 F.Supp. 642 (D.D.C.1986).

IT IS HEREBY ORDERED that plaintiff's Motion for Injunctive Relief be, and the same hereby is, denied.