James L. **EARLY**, Plaintiff,

v.

**BRISTOL MEMORIAL HOSPITAL, INC.** et al., Defendants.

No. CIV–2–80–179.

United States District Court, E. D. Tennessee, Northeastern Division.

Oct. 17, 1980.

David S. Haynes, Bristol, Tenn., for plaintiff.

Samuel W. Rutherford and Shelton B. Hillman, Jr., Bristol, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is a civil action brought under § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, seeking injunctive relief, treble damages, and attorneys fees.* The plaintiff, a licensed physician, claims that the defendants' suspension of his staff privileges at the defendant hospital constituted a combination and conspiracy " * * * to maintain an illegal boycott of [him] * * * thus depriving him from rendering services in interstate commerce and removing him from competition * * * " with the individual defendants Drs. Nowlin, Caldwell, and Green. The plaintiff moved the Court " * * * to grant a temporary restraining order * * * " enjoining the defendant hospital from continuing its suspension of his staff privileges. Rule 65(b), Federal Rules of Civil Procedure.

■ The principles of equity militate heavily against the grant of an injunction " * * * except in the most extraordinary circumstances. * * * " *Rizzo v. Goode* (1976), 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561, 574[8]. An injunction is the strong arm of equity which ought not to be extended by courts except to cases of great injury. *Detroit News. Pub. Ass'n v. Detroit Typo. Un. No. 18, Etc.,* C.A. 6th (1972), 471 F.2d 872, 876[5], certiorari denied (1973), 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687. There is no power the exercise of which is more delicate, requires greater caution, deliberation, and sound discretion, or is more dangerous in a doubtful case, than the issuance of an injunction. *Ibid.,* 471 F.2d at 876[4].

* The complaint alleged that this Court's jurisdiction was invoked under the provisions of 15 U.S.C. § 1. That, however, is not a jurisdictional statute; 28 U.S.C. § 1337 vests the federal district courts with jurisdiction over claims arising under the Sherman Act. *See Parker v. Brown* (1943), 317 U.S. 341, 349, 63 S.Ct. 307, 312, 87 L.Ed.2d 315, 325 (headnote 1).

■ This Court will not grant injunctive relief where the party seeking the same appears to have an adequate remedy at law. *O'Shea v. Littleton* (1974), 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674, 685[9, 10]; *Roseboro v. Fayetteville City Bd. of Ed.*, D.C.Tenn. (1977), 491 F.Supp. 110, 112[4], affirmed C.A. 6th (1980), 617 F.2d 603 (table). If the defendants have in fact violated the Sherman Act, as is claimed by Dr. Early, then he is entitled to recover " * * * three-fold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. * * * " 15 U.S.C. § 15. Although Dr. Early contends that his loss economically would be difficult to prove, nevertheless, he has demanded damages aggregating $250,000, which presumably would be trebled. This would appear to constitute an adequate remedy at law.

■ Furthermore, aside from the antitrust claim asserted herein, Dr. Early might well have available to him a separate remedy at law in the form of an action for damages brought in state court. If the plaintiff has been deprived of his right to practice his profession, or any part thereof, by the unreasonable, arbitrary, capricious or discriminatory actions of the defendants, or if he has been denied procedural due process, he could seek redress in the courts of Tennessee. *See Nashville Memorial Hospital, Inc. v. Binkley* (Tenn., 1976), 534 S.W.2d 318; *Henderson v. City of Knoxville* (1928), 157 Tenn. 477, 9 S.W. 697; *Armstrong v. Bd. of Directors of Fayette Cty.*, C.A.Tenn. (1976), 553 S.W.2d 77, certiorari denied (1977). A review by a state court of the decision of the defendants would appear to be broader in nature than that of this Court in the context of an antitrust action.

■ As a general rule, injunctive relief will not be granted until the party requesting it has exhausted any administrative remedies available to him. *See Sampson v. Murray* (1974), 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166; *MaCauley v. Waterman Steamship Corp.* (1946), 327 U.S. 540, 543, 66 S.Ct. 712, 713, 90 L.Ed. 839, 842 (headnote 1). Herein, Dr. Early concedes that he has not exhausted his administrative remedies since he still has available an appeal to the defendant hospital's board of directors. A temporary restraining order would not be proper until Dr. Early has pursued this avenue of possible redress.

■ Another important consideration when a court is asked to exercise its injunctive powers is the interest of the public in whether the injunction is granted or withheld. *Yakus v. United States* (1944), 321 U.S. 414, 440–441, 64 S.Ct. 660, 674–75, 88 L.Ed. 834, 857 (headnotes 16, 17). " * * * Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved. * * * " *Virginian Ry. Co. v. System Federation No. 40* (1937), 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789, 802 (headnote 7). This Court is of the opinion that the pretrial injunctive relief sought herein has but little impact on the interests of the public.

The defendants advised Dr. Early that his staff-privileges had been terminated because of information they had regarding his drug-abuse. Dr. Early's affidavit reflects that he has experienced recently certain personal and domestic problems and that since April, 1979 he has used " * * * prescription drugs for pain due to [his] hip surgery. * * * " He denied that he has ever abused the use of alcohol or any other drug, and that declaration is supported by the affidavits of other persons.

The competency of Dr. Early as a physician and the propriety of permitting his practice of his chosen profession at the defendant hospital are in dispute. Those issues, in turn, implicate the health and welfare of those patients whom he might attend at the hospital. If this Court were to order the defendants to reinstate Dr. Early to staff-privileges pending the final resolution of this action, and should it develop at or after trial on the merits that the defendants had acted properly in removing him from the hospital staff, then immeasurable harm could be suffered by hospital patients in that interval. The public has a strong

interest in seeing that only competent physicians receive staff-privileges at hospitals and that qualified medical experts, and not judges, make the determination of whether a particular physician should enjoy such privileges. Absent the most compelling reasons, the Court will not attempt to substitute its own judgment for that of the defendants prior to a full hearing of this action on its merits.

The motion of the plaintiff for a temporary restraining order hereby is DENIED. This denial is without prejudice, however, to the plaintiff's seeking the advancement of the trial of this action on its merits. *Cf.* Rule 65(a)(2), Federal Rules of Civil Procedure.

In passing, the Court cannot escape notice as to how unworkable the litigation process will likely be in actually resolving the unfortunate dispute which has arisen between the parties herein. Although Dr. Early's claim is couched in terms of a violation by the defendants of the Sherman Act, the crux of his allegations seems to be that the defendants lacked just cause for terminating his staff-privileges and failed to accord him procedural due process. Exactly how the federal antitrust laws can be used to facilitate the judicial review of this type of conduct is unclear to the Court at this time.

Even if the plaintiff is able to hurdle the interstate-commerce jurisdictional barrier, *cf. Wolf v. Jane Phillips Episcopal-Memorial Med. Ctr.,* C.A. 10th (1975), 513 F.2d 684, and *Zamiri v. William Beaumont Hospital,* D.C.Ohio (1977), 430 F.Supp. 875, he will still have to establish that the alleged restraint herein, which " * * * operates upon a profession as distinguished from a business, * * * " violates the Sherman Act. *Goldfarb v. Virginia State Bar* (1975), 421 U.S. 773, 787, 95 S.Ct. 2004, 2013, 44 L.Ed.2d 572, 585, n. 17[9b]. " * * * It would be unrealistic to view the practice of professions as interchangeable with nonprofessional commercial activities and to apply automatically to the professions antitrust concepts which originated in other areas. The public-service aspect, and other features of the professions, may require that a particular practice, which could properly be viewed as a violation of the Sherman Act in another context, be treated differently. * * * " *Idem.*

The ultimate decision as to whether a particular physician ought to enjoy staff-privileges at a hospital should be made by persons having the expertise necessary to make an intelligent decision, and not by judges. It is probably for such reason that " * * * [h]ospital boards and officials are vested with a large measure of management discretion in the selection of members of the medical staff of a hospital. * * * " *Armstrong v. Bd. of Directors of Fayette Cty., supra,* 553 S.W.2d at 79[3]. As a result, an onerous responsibility devolves upon the persons charged with making such decisions.

On the one hand, the public must be assured that each member of the medical staff of a hospital is fully competent to practice his profession at such facility; on the other hand, every effort must be made to insure that no physician will be denied staff-privileges on the basis of incorrect information or without having been afforded a meaningful opportunity to refute the charges against him. Each decision must be made with the best interest of the hospital in mind but with a full recognition of the rights of the individual physician. The termination of a physician's staff-privileges is serious business; a single precipitous decision of a medical committee could ruin a budding career.

What is really involved herein is not some cold antitrust law enacted by the Congress many years ago, but the lives and well-being of people—particularly those of Dr. Early, his patients, and the citizens of the area of Bristol, Tennessee-Virginia. The speedy resolution of this controversy is in the best interest of all concerned. Unfortunately, in the judicial system, the wheels of justice turn slowly, and, as is too often the case, after litigation has been completed there are only losers.

Dr. Early submitted affidavits herein which tend to suggest that this whole epi-

sode may have been a gigantic misunder- standing. It is not clear whether the defendants have seen all of these affidavits, and if so, whether they have taken a "second look" at their decision in their light. If the defendants have not seen these affidavits, then perhaps they would want to do so in order to satisfy themselves that they reached the correct decision. The Court thinks that any medical committee would not want to suspend the staff-privileges of a physician without having assured itself that it had before it all the pertinent information.

Counsel for the hospital (and perhaps also for the individual defendants) stated in his letter of September 24, 1980 to counsel for Dr. Early that his client took the position " * * * that impartial arbitration and mediation should be used to resolve this matter * * *." Counsel for Dr. Early would "do well" to consider that possibility.

This Court is not attempting to shirk its responsibility to handle the lawsuits filed in this judicial district, but it just seems obvious that it would be in the best interest of all concerned—Dr. Early, the hospital, Drs. Nowlin, Caldwell and Green, the patients of both Dr. Early and the hospital, and the public—if this dispute could be resolved by means other than a prolonged and expensive antitrust action. The time and talents of the medical profession can be put to much better use than being tied-up in lengthy civil litigation taking place in a court located some distance from their respective offices and patients.