**Slobodan D. VUCIECEVIC, M.D., Plaintiff,**

v.

**MacNEAL MEMORIAL HOSPITAL, an Illinois not-for-profit corporation, Berwyn Orthopedic Surgeons, Ltd., an Illinois professional corporation, J. Luke McGinness, Eugene J. Culbertson, Peter Giammanco, Jr., Vincent Guarna, Ph.D, Robert Novak, M.D., Robert Kaminski, M.D., George R. Buckun, M.D., Asok K. Ray, M.D., Tariq Iftikhar, M.D., Kent Borkevec, M.D., Miles Cermack, M.D., Harold S. Firfer, D.D.S., Jaroslav Neskodny, M.D., and Gerald J. Sebesta, Defendants.**

No. 82 C 3088.

United States District Court, N.D. Illinois, E.D.

Sept. 13, 1983.

James Prendergast, Richard J. Prendergast, Ltd., Chicago, Ill., for plaintiff.

Paul F. Stack, Stack & Filpi, Joseph A. Tecson, Chuhak, Tescon, Kienlen & Feinberg, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

Plaintiff charges that the defendants have engaged in a conspiracy—a group boycott—in restraint of trade in violation of section one of the Sherman Antitrust Act, 15 U.S.C. § 1 (Count I) and national origin employment discrimination contrary to section 601 of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count II).

This matter is before the Court on the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), and for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1). The parties have supported and responded to the motions by bringing before the Court matters outside the pleadings. Accordingly, the motions to dismiss will be treated as if for summary judgment and disposed of as provided for in Fed.R.Civ.P. 56. In compliance with Fed.R. Civ.P. 12, all parties have been given reasonable opportunity to present all pertinent matters.

### I. Facts

Plaintiff Slobodan Vuciecevic is of Serbian-Yugoslavian national origin and is a permanent resident of the United States. He is a licensed physician and maintains a medical practice in and around Berwyn, Illinois specializing in orthopedics and orthopedic surgery.

Defendant MacNeal Memorial Hospital ("MacNeal") is a public health care facility located in Cook County, Illinois. Defendant Berwyn Orthopedic Surgeons, Ltd. is a professional corporation engaged in the medical practice of orthopedics and orthopedic surgery. The officers and shareholders of the corporation include defendants Robert Kaminski, Tariq Iftikhar and Asok Ray. The remaining individual defendants are members of the administrative and medical staff and the board of directors of MacNeal.

Beginning in September of 1980, plaintiff inquired of defendants Kaminski and Ray concerning the possibility of his practicing orthopedic surgery in Berwyn with the expectation that he would be granted medical staff privileges by MacNeal. Kaminski was chairman of MacNeal's division of surgery and Ray was on the medical staff specializing in orthopedic surgery. According to plaintiff, Kaminski and Ray told him that they did not want to lose any patients to him in the event that he established a medical practice in Berwyn and they advised him not to seek staff privileges.

Plaintiff alleges that he did establish a medical practice in Berwyn in February, 1981 and applied for membership on MacNeal's medical staff. Subsequently, he appeared before a committee of the division of surgery chaired by Kaminski. The committee recommended that plaintiff be denied membership on the medical staff for reasons allegedly unrelated to his medical qualifications. Thereafter plaintiff appeared before MacNeal's credentials' committee. Again without stating any reason and allegedly without cause, the credentials' committee voted to deny plaintiff's application for membership on the staff.

Plaintiff's application was next presented to the full medical/dental staff. In September, 1981 the full staff, by a vote of 60–45, approved his application for staff privileges. Its recommendation was conveyed to the hospital's board of directors. In November, 1981 plaintiff was notified

that the board had rejected his application for staff membership. In January, 1982 plaintiff, at his request, appeared before a committee of the board of directors. In March, 1982 he was notified by letter that the board of directors had reviewed the report of the interview committee and would take no further action on the application.

## II. Count I

### A. Liability Standard

In Count I, plaintiff alleges that his denial of staff privileges at MacNeal evidences a concerted refusal to deal and a group boycott, in violation of section one of the Sherman Act. The result of the denial, he says, prevents him from competing effectively in his profession [1] and impermissibly restrains interstate commerce throughout Cook County, Illinois and northwest Indiana, southern and southwest Wisconsin.

Plaintiff's allegation of an unlawful effect on interstate commerce proceeds from his contention that the defendants are directly involved in the delivery of medical/surgical and hospital services in Cook County, Illinois where MacNeal is located. These activities, in turn, allegedly have had a continuous and substantial effect on interstate commerce in that numerous non-residents of Illinois come into Illinois to purchase medical services from plaintiff and defendants; that the purchase of services affects the financing of materials and equipment from outside Illinois which are delivered for use in Illinois; and that delivery of materials and the purchase of service in Illinois has caused other materials to flow between Illinois and other states.

Defendants move to dismiss Count I on the basis that plaintiff has failed to allege a substantial adverse effect on competition in a relevant market. Furthermore, the defendants assert that neither a product market nor a geographic market is described. Plaintiff contends that the allegations in the

---

1. During the pendency of this motion, plaintiff extensively revised his broad view of the relevant geographic market and suggested that the market might be only MacNeal's immediate patient drawing area. *See infra* at p. 1429.

complaint state a *per se* violation of section one of the Sherman Act and, therefore, it is unnecessary to plead an adverse impact on competition in a relevant market. Plaintiff argues, however, that the complaint does sufficiently allege an adverse impact on competition in the delivery of medical services—the product—and describes the boundaries of the relevant geographic market. Thus, plaintiff says that his complaint states a cause of action even under defendants' approach.

Generally the "Rule of Reason" is applied to determine the lawfulness of a claimed restraint on competition. *Continental T.V., Inc. v. GTE Sylvania*, 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). An element of the Rule of Reason is the determination of the adverse effect on product competition in a relevant market. *See, e.g., Independence Tube Corp. v. Cooperweld Corp.*, 691 F.2d 310, 322 (7th Cir.1982); *Phil Tolkan Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association*, 672 F.2d 1280, 1287 (7th Cir.1982). There are, however, those agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal *per se. United States v. Topco Associates, Inc.*, 405 U.S. 596, 607–08, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972). For these *per se* violations, an adverse effect on competition is presumed to exist as a matter of law. *Continental T.V., Inc. v. GTE Sylvania, Inc., supra* 433 U.S. at 49–50, 97 S.Ct. at 2557.

Plaintiff is correct that refusals to deal and group boycotts typically have been among those categories of anticompetitive conduct deemed to be *per se* violations of the Sherman Act. *See, e.g., United States v. General Motors Corp*, 384 U.S. 127, 86 S.Ct. 1321, 16 L.Ed.2d 415 (1966); *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959). Nonetheless not all alleged group boycotts or refusals to deal will be characterized as *per se* violations. Because the Rule of Reason is presumptively applicable except in

extreme circumstances, this Circuit holds that

> a particular course of conduct will generally be termed a per se violation of the Act only after courts have had considerable experience with the type of conduct challenged and application of the Rule of Reason has inevitably resulted in a finding of anticompetitive effects.

*Havoco of America, Ltd. v. Shell Oil Company*, 626 F.2d 549, 555 (7th Cir.1980). Similarly in *U.S. Trotting Association v. Chicago Downs Association, Inc.*, 665 F.2d 781, 787 (7th Cir.1981), the Court of Appeals stated

> the danger of rote application of the per se rule to all conduct that can be called "group conduct" is that the sound teachings of experience will be extended into new and unfamiliar areas where they have no proper application.

*Accord Phil Tolkan-Datsun, Inc. v. Greater Milwaukee Datsun Dealers' Advertising Association, Inc., supra* at 1285.

Thus, the type of conduct alleged as anticompetitive here, denial of medical staff privileges, could be considered a *per se* violation only after the courts have become familiar with that conduct and any anticompetitive effect it causes. Moreover, although the Supreme Court has repeatedly disavowed any professional exemption from antitrust liability, it has nonetheless consistently indicated that the antitrust laws ordinarily will be applied less rigorously to professions than to trades or industries. *Arizona v. Maricopa County Medical Society*, 457 U.S. 332, 102 S.Ct. 2466, 2475–76, 73 L.Ed.2d 48 (1982); *National Society of Professional Engineers v. United States*, 435 U.S. 679, 696, 98 S.Ct. 1355, 1367, 55 L.Ed.2d 637 (1978), *Goldfarb v. Virginia State Bar Association*, 421 U.S. 773, 787 n. 17, 95 S.Ct. 2004, 2013 n. 17, 44 L.Ed.2d 572 (1975).

The most recent case similar to this one decided by the Seventh Circuit is *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center*, 684 F.2d 1346 (7th Cir.1982). In *Dos Santos* a preliminary injunction barring the enforcement of an exclusive contract between a professional association of anes-

thesiologists and a hospital was challenged as an antitrust violation. The injunction had been entered on the motion of Dr. Dos Santos who was unable to sell her anesthesia services to the hospital because she did not belong to the association. The district court characterized the disputed behavior as a *per se* violation. On appeal, the injunction was reversed. The court indicated that the case was properly treated as one involving the Rule of Reason because the practice of a profession was involved. *See also Marrese v. The American Academy of Orthopedic Surgeons,* 706 F.2d 1488 (7th Cir. 1982).

In *Marrese v. American Academy of Orthopedic Surgeons,* the Seventh Circuit also described an exception to its holding that an alleged refusal to deal or group boycott generally should be tested by the Rule of Reason. An exception exists if the boycott is

> used to enforce agreements that are themselves illegal *per se*—for example price fixing agreements (citations omitted).... At least that is the rule for organized associations having some lawful purposes; and we need not decide whether a conspiracy or other ad hoc "association" if anti-competitive in intent would be treated under a harsher standard.

*Id.* at 1495.

This case involves the regulation of health care by members of a profession. The courts, although no strangers to such cases are not well-acquainted with them either. Certainly it is not contended that any boycott here was used to enforce an agreement illegal *per se* in its own right, such as to fix the price of orthopedic care.

■ The disputed behavior also may be regarded as a species of industry regulation. In *Silver v. New York Stock Exchange,* 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963), the Supreme Court laid down a three-part test which, if passed, permits the application of Rule of Reason analysis to alleged concerted refusals to deal in an industry seeking to self-regulate. The three requisites are if (1) there is a mandate for self-regulation; (2) the action is consistent with the policy justifying self-regulation and no more extensive than necessary; and (3) procedural safeguards are applied. *See also U.S. Trotting Association v. Chicago Downs Association, supra, on remand* 487 F.Supp. 1008 (1980). If these three elements are unsatisfied, the boycott of one professional by a group of professionals likely will be termed a *per se* violation.

The issue of appointment to a medical staff of a hospital meets the first *Silver* criterion for Rule of Reason testing. Because hospitals may be liable for the conduct of staff physicians, the boards of directors have an obligation to ensure that all staff physicians are competent. *Darling v. Charleston Community Memorial Hosp.,* 33 Ill.2d 326, 333, 211 N.E.2d 253 (1965), *cert. denied,* 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966) (hospital's failure to review staff competence constitutes negligence). *See also Early v. Bristol Memorial Hosp.,* 508 F.Supp. 35, 38 (E.D.Tenn.1980); *Hospital Liability for Negligence,* 21 Hastings L.J. 1 (1969); *Hospital Liability: Changing Patterns of Responsibility,* 8 U.S. F.L.Rev. 247, 254–57 (1973).

A board of directors of a hospital, composed as it typically is largely of lay persons, is not capable of evaluating the credentials and performance of physicians without the assistance of its medical staff. For this purpose, the board must rely on the reports and recommendations of the professionals on and off the board. Without such advice, the hospital board would be unable to effectively monitor its staff, guard against legal liability and maintain the confidence of the public in the hospital as a provider of first class health care. The Court finds that the nature of the service that a hospital provides mandates critical self-regulation of its medical staff.

The second requirement under *Silver,* the prudent imposition of the regulatory process, also appears to be applicable to the staff privilege review. Staff physicians are in the best position to evaluate the competence of other physicians and to advise the board whether to accept or reject a candi-

date. Consequently their action theoretically is no more extensive than necessary because the advice must be based on a review of the applicant's qualifications, training, experience and competence.

The third prerequisite necessary to justify the application of the Rule of Reason is the adoption of procedural safeguards to ensure that regulation does not masquerade for anticompetitive intent. For a denial of staff privileges to avoid *per se* illegality, it must have been the outcome of fair procedures. The hospital must give the physician notice of the hearings concerning his application and an opportunity to establish his competence and respond to any alleged deficiencies in his qualifications. If proper procedural safeguards are provided, a hospital's denial of staff privileges based on staff recommendations falls within the exception to *per se* treatment of concerted refusals to deal and group boycotts. All three prongs of the *Silver* exception to *per se* treatment for denial of staff privileges are met.

■ The Court finds that the violations alleged here do not deserve to be characterized as *per se* violations; the plaintiff is not relieved of the burden of alleging an anticompetitive injury.

■ Contrary to defendants' arguments the plaintiff has sufficiently alleged an anticompetitive injury in a relevant product market and interstate nexus.[2] The Court notes, however, that the plaintiff's position with respect to the relevant geographic market has changed since the filing of the complaint. Plaintiff now contends that the relevant market may only be the immediate MacNeal hospital area. As in *Dos Santos v. Columbus-Cuneo-Cabrini Medical Center,* the Court questions whether the relevant market "can be sliced so small as to embrace only a single hospital." 684 F.2d at 1353. It is more likely that as in *Marrese v. American Academy of Orthopedic Surgeons, supra,* the plaintiff will have the

burden at trial of showing that competition in the local market will be insufficient to assure the consuming public the benefits of competition if he is denied staff privileges.

■ The Rule of Reason analysis will focus on the power, purpose and effects of the restraint. If it is established that anticompetitive efforts predominate over professional concerns, the refusal will be unlawful so long as an anticompetitive effect also is proven. Plaintiff will have to establish to the satisfaction of the Court that he either meets the tests suggested in the cited recent opinions of the Court of Appeals for the Seventh Circuit or show that another applicable test is met in order to prevail on Count I. At this point, however, it would be improper to determine without further discovery that plaintiff cannot meet whatever test is applicable. The Court cannot now find whether a genuine issue of material fact exists as to anticompetitive effect. Thus the granting of summary judgment for the defendants is precluded as premature. *See, e.g. Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1282 (7th Cir.1983).

### *III. Count II*

In Count II, the plaintiff contends that the defendants violated section 601 of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, in that defendants conspired to deny him staff privileges because he is of Serbian-Yugoslavian origin.

Section 601 provides

No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving federal financial assistance.* (emphasis added).

Plaintiff contends that MacNeal is a recipient of federal funds under various federal programs and, therefore, that Title VI pro-

---

**2.** *See Bunker Ramo Corp. v. United Business Forms, Inc.,* 713 F.2d 1272, 1280–82 (7th Cir. 1983), where the Seventh Circuit extensively discusses the requisite interstate nexus, holding that it is satisfied "by a showing that the chal- lenged activity occurred in interstate commerce or if the activity is wholly local in nature, by a showing that interstate commerce was substantially affected." (citations omitted).

vides relief to him for discriminatory failure to grant staff privileges. Defendants concede only that MacNeal is a recipient of Medicare/Medicaid funds. And, in fact, plaintiff's pleadings in this regard expressly relate only to MacNeal's Medicare/Medicaid reimbursements.

In discussing Title VI, the Seventh Circuit recently stated in *Simpson v. Reynolds Metals Co.,* 629 F.2d 1226, 1235 (7th Cir.1980), that Congress did not intend to extend the protection under Title VI to any person other than an "intended beneficiary of, an applicant for, or a participant in a federally funded program." Support for this position comes especially from section 2000d–3, which reads

> Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization except where a *primary objective* of the Federal financial assistance is to provide employment. (emphasis added)

42 U.S.C. § 2000d–3. Read together these sections require a logical connection between the use of federal funds and the practice toward which the agency action is directed.

The plaintiff relies only on Medicare/Medicaid payments to *MacNeal* as the basis for suing under Title VI: he obviously is not an intended beneficiary of such programs. The complaint is devoid of any other allegations which indicate that MacNeal participates in a federally funded program which is intended, primarily or otherwise, to benefit the employment of physicians. Count II does not state a cause of action under Title VI. *See Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 276 (2nd Cir.1981), *cert. denied,* 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982); *Trageser v. Libby Rehabilitation Center, Inc.,* 590 F.2d 87 (4th Cir.), *cert. denied,* 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979); *Carmi v. Metropolitan St. Louis Sewer Districts,* 620 F.2d 672 (8th Cir.), *cert. denied,* 449

U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980); and *Choudhury v. Reading Hospital and Medical Center,* 677 F.2d 317 (3rd Cir. 1982).

IT IS THEREFORE ORDERED that

(1) Plaintiff's claim of a group boycott or concerted refusal to deal will be analyzed according to the Rule of Reason.

(2) The motion for summary judgment on Count I is denied because at this time the Court cannot find that there is no genuine issue of fact as to whether the conduct alleged has an anticompetitive effect within the meaning of section one of the Sherman Act.

(3) Count II of the complaint is dismissed for failure to state a claim upon which relief can be granted.

(4) This case is set for a status hearing on October 3, 1983 at 9:30 a.m.